UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XEROX CORPORATION,

        Plaintiff,                          CASE NO. 06-14356

-vs-                                    PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

N.W. COUGHLIN & CO., et al.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The matter before the Court is Plaintiff Xerox Corporation's ("Plaintiff") December 14, 2007 Motion for Summary Judgment against Corporate Defendants. (Dkt. No. 43). Defendants failed to file a Response to the Motion or request an extension in which to file a Response to the Motion. A hearing the matter was held on May 15, 2008. The Court heard argument from both parties.

**I.    BACKGROUND**

    **A.    Factual Background**

This case arises from Plaintiff's allegation that Defendants have breached a contract regarding the lease of equipment.

Plaintiff is a New York corporation that maintains its principal place of business in New York. (2d. Am. Compl. ¶ 1). Defendant N.W. Coughlin & Co. ("N.W. Coughlin") is a Michigan corporation whose registered office is in Plymouth, Michigan. (*Id*. ¶ 2). Plaintiff believes that N.W. Coughlin now operates under the name 1980 Corporation. (*Id*.). Defendant M. Blanc ("M. Blanc") is a Nevada corporation with its principal place of business in Carson City, Nevada. (*Id*. ¶ 3).

Defendant N.W.C. Program Administration, which does business as N.W. Coughlin & Co. ("N.W.C"), is a Michigan corporation with its principal place of business at 13001 Merriman Rd., Livonia, Michigan.[1] (*Id*. ¶ 4).

Plaintiff's Second Amended Complaint also names four individual Defendants who are citizens of Michigan and reside in this District: Robert Lott ("R. Lott"), Linda Lott ("L. Lott"), David Merchant ("Merchant"), and Darwin Semann ("Semann"). (*Id*. ¶¶ 5-8).

Plaintiff supplies and leases copying and printing equipment to businesses and also services the equipment. (*Id*. ¶ 10). Both N.W. Coughlin and N.W.C. are in the business of providing marketing support services to businesses and individuals, including printing and copying services. (*Id*. ¶¶ 11-12).

In 1980, N.W. Coughlin was incorporated as "1980 Corporation," however, one month after its incorporation its named was changed to N.W. Coughlin & Co. (*Id*. ¶ 13). Defendants R. Lott and L. Lott acted as officers, directors, and/or resident agents of N.W. Coughlin from 1983 through 2006. (*Id*. ¶ 14).

N.W.C. was incorporated in 1994 as "N.W.C. Administration, Inc."; one month later its name was changed to "N.W.C. Program Administration, Inc." (*Id*. ¶ 16). Defendants R. Lott and L. Lott acted as an officers, directors, and/or resident agents of N.W.C. from 1994 until at least October 1, 2006. (*Id*. ¶ 17). Semann also worked for N.W. Coughlin, as Chief Operating Officer, from 1983 until 1992, however, he continued to receive health insurance and a cell phone from N.W. Coughlin through 2006. (Semann Dep. at 11-12).

---

[1] Plaintiff also notes that N.W. Coughlin formerly did business at 13001 Merriman Rd., Livonia, Michigan. (*Id*. ¶ 2).

Both N.W.C. and N.W. Coughlin maintained a physical location at 13001 Merriman Rd., Livonia, Michigan. (2d Am. Compl. ¶¶ 15, 18).

M. Blanc is an investment, and consulting company that made loans to N.W. Coughlin which were secured by collateral owned by N.W. Coughlin. (*Id*. ¶ 19; Plf. Br. Ex. 24, Semann Dep. at 4).

M. Blanc was incorporated in Nevada in 1998. Semann has acted as M. Blanc's sole officer, director, and resident agent of M. Blanc from 1998 through the present. During this time period, M. Blanc held promissory notes from and security interests in the assets of N.W. Coughlin. (*Id*. ¶¶ 20-21; Semann Dep. at 4). In 2005 and 2006, M. Blanc held its shareholders and directors' meetings in Plymouth, Michigan and Livonia, Michigan. (*Id*. ¶ 23).

Plaintiff and N.W. Coughlin executed four lease agreements for the use of equipment which was to be used by N.W. Coughlin in its business. (Plf. Br. Ex. 1, May 3, 2003 Lease; Ex. 2 August, 2003 Lease; Ex. 3 July, 2005 Lease; Ex. 4 December, 2005).

Defendants admitted in their Answer to the Second Amended Complaint that they have "missed some payments" to Plaintiff. (Ans. ¶ 45). Plaintiff further contends that N.W. Coughlin failed to make any lease payments from March 2006 to the present time. (Plf. Br. Ex. 7, Janet Atkinson Aff. ¶ 4; Ex. 8, Answer to Plaintiff's Request to Admit, No. 3, at 9). Plaintiff notes that Defendants failed to return or purchase the equipment at that time. (Atkinson Aff. ¶ 8).

On August 17, 2006, M. Blanc sent a letter to N.W. Coughlin which indicated that N.W. Coughlin had "materially defaulted" on its loans in the principal amount of $1,300,000.00. (Plf. Br. Ex. 9, Letter re: Defaulted Secured Loans). In the letter, M. Blanc, noted that it was willing to accept "a voluntary surrender of all the assets of N.W. Coughlin & Company in full satisfaction of the secure indebtedness." (*Id*.).

After receiving this letter, N.W. Coughlin surrendered all of its assets to M. Blanc, including the equipment leased from Plaintiff – the subjects of the four lease agreements between N.W. Coughlin and Plaintiff. (*Id.*). At this same time, Plaintiff argues that Defendants were not paying on the lease agreements.

In September 2006, Plaintiff received a letter from Defendants' counsel indicating that M. Blanc received all of N.W Coughlin's assets, including equipment in which Plaintiff has a security interest. (Plf. Br. Ex. 10, September 1, 2006 Letter).

On October 1, 2006, Merchant, long time employee of N.W. Coughlin, purchased all of N.W.C.'s outstanding stock for $120,000; became the sole director, sole officer, and resolved to purchase all of N.W. Coughlin's assets and to finance the purchase with a promissory note and security agreement with M. Blanc. (*See* Plf. Br. Ex. 11, Consent of the Shareholders; Ex. 12, Stock Subscription Agreement; Ex. 13, Assignment of Stock Certificate). The same day N.W.C. executed a promissory note in the amount of $800,000 and a security agreement to purchase N.W. Coughlin's assets from M. Blanc. (Plf. Br. Ex 14, Promissory Note and Security Agreement).

On September 30, 2006, the day prior to Merchant purchasing N.W.C.'s stock, L. Lott, N.W.C.'s sole shareholder, resigned as President, Treasurer, Secretary, Director and Resident Agent, and assigned all her stock to the company. (Plf. Br. Ex. 16, Assignment of Stock). Merchant signed three "Certificates of Assumed Name" as president of N.W.C. in July, 2006. (Plf. Br. Ex. 17, Certificates of Assumed Name).

Through a certificate of assumed name, N.W.C. began to do business under the name as "N.W. Coughlin & Co." as of August 10, 2006. (*Id.*). On August 9, 2006, N.W. Coughlin changed

4

its name to "1980 Corporation." (Plf. Br. Ex. 18, Certificate of Amendment). Therefore, it appears that one of the companies was always functioning as "N.W. Coughlin & Co."

R. Lott testified that N.W. Coughlin/1980 Corporation is now winding down its business and is no longer operating. (R. Lott Dep. 39-40). Semann has also testified that M. Blanc is winding down its business. (Semann Dep. at 14).

**B.     Procedural Background**

Plaintiff filed a breach of contract claim against N.W. Coughlin on October 3, 2006. Plaintiff also filed a state court action against N.W.C. for "Claim and Delivery" because N.W.C. refused to return the equipment it possessed without conditions. (Plf. Br. at 8). Thereafter, Plaintiff and Defendants N.W. Coughlin and N.W.C. agreed to consolidate the cases and the state action was voluntarily dismissed. (*Id.*).

On May 31, 2007, the Court granted Plaintiff leave to file its First Amended Complaint. (Dkt. No. 11).

On August 29, 2007, Plaintiff filed a Motion to Compel First Discovery Requests. (Dkt. No. 19). On September 20, 2007, Plaintiff filed a Motion to Compel Depositions and a Motion to Compel Complete Responses to Discovery as to Defendant N.W. Coughlin. (Dkt. Nos. 20 & 21). These Motions were referred to Magistrate Judge Scheer and Stipulated Orders resolving the issues were filed on October 26 and November 11, 2007. (Dkt. Nos. 26 & 27).

On November 29, 2007, Plaintiff filed a Motion for Contempt and Sanctions for Failure to Comply with the Discovery Order. (Dkt. No. 32).

On December 14, 2007, after being granted leave, Plaintiff filed its Second Amended Complaint. (Dkt. No. 44). The same day, Plaintiff filed the instant Summary Judgment Motion

5

against the Corporate Defendants; N.W. Coughlin, N.W.C. Program Administration, and M. Blanc. (Dkt. 43).

On January 22, 2008, Magistrate Judge Scheer granted Plaintiff's Motion for Sanctions. (Dkt. No. 51). However, Magistrate Judge Scheer held that rather than monetary sanctions, Defendants were ordered to produce certain documents and bear the cost of making those documents available, although Plaintiff was ordered to bear the cost of copying any of those documents it seeks to copy.

On February 6, 2008, Defendants filed an Answer to the Second Amended Complaint.

Defendants have failed to file a response to the Motion for Summary Judgment, nor have Defendants sought a stipulation or an extension of the deadline of March 13, on which the response was due.

## II. ANALYSIS

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

> if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

    **B.**    **Lack of Response by Defendants**

The Sixth Circuit has held, "the non-moving party bears a burden once the movant has pointed a record evidence showing that there are no genuine issues of material fact....This burden to respond is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden – for example, by remaining silent – its opportunity is waived and its case wagered." *Guarino v. Jones*, 980 F.3d 399, 405 (6th Cir. 1992).

In the instant case, the Defendants have failed to respond to the Motion for Summary Judgment. Further, the Defendants have failed to request an extension of time in which to file a response. Defendants' counsel attended the motion hearing and was permitted to make oral argument.

**C.     Breach of Contract; Count I**

Plaintiff contends that Defendant N.W. Coughlin breached the terms of the four leases by transferring the equipment to M. Blanc and N.W.C., failing to make monthly payments.

By the terms of the leases, N.W. Coughlin was obligated to make monthly payments to Plaintiff for 60 months or 24 months. (Plf. Br. at 10). Failure to make these timely payments constituted default of the leases. (Exs. 1 & 2 at ¶ 13.B; Exs. 3 & 4 at ¶ 12.B).

It is undisputed that N.W. Coughlin has failed to make timely payments. (Ex. 5 at ¶ 23; Atkinson Aff. ¶ 4).

Further, the terms and conditions of the leases state N.W. Coughlin was prohibited from transferring, assigning or relocating the equipment. (Exs. 1-4 at ¶ 11). N.W. Coughlin did transfer the equipment to M. Blanc (Letter re: Defaulted Secured Loans & September 1, 2006 Letter) and subsequently N.W.C. was in possession of the equipment. (Ex. 5, ¶ 26). Plaintiff did not give N.W. Coughlin permission to transfer the equipment nor did N.W. Coughlin purchase the equipment. (Atkinson Aff. ¶ 10).

Pursuant to the terms and conditions of the leases, N.W. Coughlin agreed that in the event of a default:

> If you default, Xerox . . . . may require immediate payment, as liquidated damages for loss of bargain and not as a penalty, of: (a) all amounts then due, plus interest on all amounts due from the due date until paid at the rate of one and one-half percent (1.5%) per month (not to exceed the maximum amount permitted by law); (b) the remaining Minimum Lease Payments in the Agreement's term less any unearned finance, maintenance, and supply charges (as reflected on the lessor's books and records); (c) a reasonable disengagement fee calculated by Xerox (the amount of such fee to the available from Xerox at any time upon request; and (d) all applicable Taxes. In addition to paying the amounts required the preceding sentence if you default, you shall either (1) return the Equipment to Xerox in the same condition as when delivered, reasonable wear and tear excepted, when requested to do so by Xerox, or (2) purchase the Equipment by paying Xerox the Purchase Option therefore and all applicable Taxes . . . In addition, if you default under this Agreement, you agree to pay all of the costs Xerox incurs to enforce its rights against you, including reasonable attorneys' fees and actual costs.

(Ex. 1 & 2 at ¶ 13.B). Similarly stated in the other two leases:

> If you default, Xerox . . . . may require immediate payment, as liquidated damages for loss of bargain and not as a penalty of: (1) all amounts then due, plus interest on all amounts due from the due date until paid at the rate of one and one-half percent (1.5%) per month (not to exceed the maximum amount permitted by law; (b) the remaining Minimum Lease Payments in the Agreement's term less any unearned finance, maintenance, and supply changes (as reflected on the lessor's books and records; (c) a reasonable disengagement fee calculated by Xerox that will not exceed fifteen percent (15%) of the amount in (b) above (said amount is available from Xerox upon request) and (d) all applicable Taxes. You also shall either (1) make the Equipment available for removal by Xerox when requested to do so by Xerox and, at the time of removal, the Equipment shall be in the same condition as when delivered (reasonable wear and tear excepted), together when any related software, or (2) purchase the Equipment: "AS IS, WHERE IS" and WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE by paying xerox the Purchase Option and all applicable Taxes. . . . In addition if you default under this Agreement, you agree to pay all of the cots Xerox incurs to enforce its rights against you, including reasonable attorneys' fees and actual costs.

(Ex. 3 & 4 at ¶ 12.B).

Plaintiff contends its damages for the four leases, the maintenance agreement, interest, costs, and attorneys' fees equals a total of $735,718.52.

9

The record is clear that N.W. Coughlin breached its four leases by failing to make timely payments and for transferring the equipment in violation of the leases. Further, N.W. Coughlin has failed to controvert Plaintiff's damage calculation. For these reasons, the Court finds summary judgment is appropriate as to Count One against N.W. Coughlin in the amount of $735,718.52.

**(D)     Successor Liability for Breach of Contract as to N.W.C.**

Plaintiff argues that N.W.C. is liable for N.W. Coughlin's breaches of the four leases as a successor entity. Pursuant to Michigan law, when one company sells its assets to another, the successor is generally not liable for the debts and liabilities of the seller company. However, Michigan Supreme Court has set forth five exceptions to this general rule:

> (1) where there is an express or implied assumption of liability;
> (2) where the transaction amounts to a consolidation or merger;
> (3) where the transaction was fraudulent;
> (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or
> (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 417 (1976); *Foster v. Cone-Blanchard Machine Co.*, 460 Mich. 696, 703 (1999) (same).

Plaintiff contends there was a *de facto* merger of N.W. Coughlin and N.W.C. and this merger resulted in a "mere continuation" of N.W. Coughlin through N.W.C. such that N.W.C. is liable for N.W. Coughlin's liabilities.

> A prima facie case of continuity of enterprise exists where the plaintiff establishes the following facts: (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operation, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. . . . [A]n additional

principle relevant to determining successor liability, whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation

*Foster*, 460 Mich. at 703-04.

> (1)  Continuation of management, personnel, physical location, assets, and general business operations

Plaintiff contends that there is continuity of management, personnel, physical location, assets, and general business operations.

N.W.C is owned solely by Merchant, who is also the sole officer and stockholder of N.W.C. as well as being a former thirty year employee of N.W. Coughlin.

Nineteen of N.W.C's twenty-five employees are former employees of N.W. Coughlin. (Plf. Ex. 21, List of Employees; Merchant Dep. at 82-86). N.W.C. operates from the same address as N.W. Coughlin. (Merchant Dep. at 7).

N.W.C. purchased all of N.W. Coughlin's assets in October 2006. (Plf. Br. Ex. 26, Bill of Sale.). N.W.C.'s major business is off-set printing; N.W. Coughlin also did off-set printing. (Merchant Dep. at 56; R. Lott Dep. at 54).

R. Lott, a former officer, director, and/or shareholder of N.W. Coughlin, testified that he was helping Merchant with N.W.C. (R. Lott Dep. at 29-31). R. Lott also referred collectively to himself and N.W.C. as "we" when referring to decisions being made about equipment. (*Id.* at 30:3-10).


> (2)  Cessation of N.W. Coughlin

N.W. Coughlin has ceased to operate. (Plf. Ex. 8). R. Lott also testified that he is attempting formally to wind down the business. (R. Lott Dep. at 25-26). Further, R. Lott stated,

> N.W. Coughlin & Company, now 1980 Corporation had to go away as far as an entity because it doesn't have any assets and any whatever. I chose to decide 12/31

to be its final act and therefore this put in paper that there is [sic] no more officers of N.W. Coughlin, 1980 Corporation, as of 12/31.

(*Id*. at 39:7-12).

   (3)  Assumption of Liabilities and Obligations

Plaintiff notes that because of Defendants failure to disclose its customer list, it cannot show that N.W.C. and N.W. Coughlin shared the same customer list. However, N.W.C. and N.W. Coughlin did assume N.W. Coughlin's real estate lease as well as the rest of its assets through the transaction with M. Blanc. (Plf. Br. Ex. 12, Stock Subscription Agreement § 7).

   (4)  N.W.C. as a Continuation of N.W. Coughlin

N.W.C. was a "shell company" with no assets and no liabilities prior to late September, 2006. Additionally, L. Lott was the sole shareholder and director of N.W.C. prior to Merchant's purchase of the company in September, 2006.

N.W.C. operates a substantially similar business to that of N.W. Coughlin from the same building with a majority of the same employees.

At almost the exact time N.W. Coughlin changed its name to "1980 Corporation," N.W.C. changed its name to N.W. Coughlin & Co.

In light of these uncontroverted facts, the Court finds there is no genuine issue of material fact as to whether N.W.C. operates as a "mere continuation" of N.W. Coughlin such that it is liable as a successor under Michigan law and grant summary judgment on this claim.

 **E.** **Common Law and Statutory Conversion; Counts III-V and Claim and Delivery Count VII**

   (1)  Conversion

Plaintiff alleges that all three corporate Defendants have committed common law and statutory conversion. Pursuant to Michigan common law, "[t]he tort of conversion is 'any distinct

act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 111 (Mich. Ct. App. 1999) (internal citation omitted). Statutory conversion, pursuant to § 600.2919a, "consists of knowingly 'buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property.'"[2] *Id.* (internal citation omitted).

Plaintiff contends N.W. Coughlin has committed common law and statutory conversion because it never purchased the equipment at issue and admits to "surrendering" the equipment to M. Blanc on August 17, 2006. (Letter re: Defaulted Secured Loans & September 1, 2006 Letter). R. Lott also testified:

> We did know which assets were leased. Especially we knew that nobody owned the Xerox machines because we all knew we had not purchased any of them, of the large production machines, and they were owned by Xerox.

(R. Lott Dep. at 22:5-9).

---

[2] Section 600.2919a states in its entirety:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

    (a)    Another person's stealing or embezzling property or converting property to the other person's own use.

    (b)    Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or controverted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

As these facts are not in dispute, it is clear from the record that N.W. Coughlin, in knowingly conveying property that it did not own to satisfy a debt, "converted" the property under Michigan common law. Further, because N.W. Coughlin converted the property to "its own use" statutory conversion also occurred.

The Court also finds M. Blanc has committed common law and statutory conversion. M. Blanc received property that was wrongfully converted by N.W. Coughlin. (Letter re: Defaulted Secured Loans). M. Blanc took possession of the equipment from N.W. Coughlin. (*Id.*). M. Blanc's counsel then notified Plaintiff that it had discovered Plaintiff's "interest" in the property on September 1, 2006. (September 1, 2006 Letter). However, on October 1, 2006, M. Blanc transferred the assets of N.W. Coughlin, including the equipment at issue, to N.W.C. in exchange for a promissory note in the amount of $800,000. (Plf. Ex. 14, Promissory Note and Security Agreement). In light of these facts, the Court finds M. Blanc actions in selling and possessing property it knew was wrongfully converted constitutes both common law and statutory conversion.

Finally, there is no dispute that N.W.C. ultimately came to possess the equipment and used it for approximately two months while it considered purchasing the equipment. (Plf. Br. Ex. 5, ¶ 26; Ex. 15, Merchant Dep. at 23-24). Plaintiff contends that because Merchant was N.W.C.'s sole officer, director and shareholder as well as a previous employee of N.W. Coughlin for at least thirty years, Merchant was aware that the equipment at issue was owned by Plaintiff at all times. (Merchant Dep. at 6). Defendants have failed to dispute this assertion. Therefore, because N.W.C possessed and used equipment it did not own and it was aware of that fact, the Court finds N.W.C. has committed common law and statutory conversion.

For all these reasons, the Court finds no genuine issues of material fact exist as to whether all three Defendants committed common law and statutory conversion. As a result, Plaintiff is entitled to summary judgment on these counts and treble damages for statutory conversion pursuant to § 600.2919a.

  (2) Claim and Delivery

Plaintiff argues it is entitled to damages pursuant to Mich. Comp. Laws § 600.2920, for "claim and delivery." Section 600.2920, states in pertinent part:

> 1) A civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention. . . .

Plaintiff alleges that Defendants "unlawfully detained" its property, the equipment, in violation of § 600.2920. Defendants returned Plaintiff's equipment in late October, 2007. (Plf. Suppl. ¶ 1).

For the reason that there is no genuine issue of material fact as to each Defendant wrongfully converting the equipment, the Court holds that Defendants have "wrongfully detained" the equipment under the statute and summary judgment is appropriate.

**F. Damages**

Plaintiff seeks the following in damages for the breach of contract claim:

| | |
|---|---|
| Damages: May 6, 2003 Lease | 181,251.87 |
| Damages: August 21, 2003 Lease | 111,388.05 |
| Damages: July 21, 2003 Lease | 335,935.34 |
| Damages: December 1, 2005 Lease | 45,585.56 |
| Damages: Maintenance Agreement | 2,215.00 |
| Interest pursuant to 28 U.S.C. 1961 | 25,669.38 |

| | | |
|---|---|---|
| Costs | | 427.07 |
| Attorneys' Fees | | 33,246.25 |
| Less re-sale | | (40,000.00) |
| | TOTAL: | $695,718.52[3] |

Plaintiff seeks the following in damages for its conversion claims:

| | | |
|---|---|---|
| Damages for Conversion: | | 450,077.00 |
| Treble Damages for Statutory Conversion: | | 1,350,231.00 |
| Interest pursuant to 28 U.S.C. § 1961 | | 22,002.55 |
| Costs | | 427.07 |
| Less re-sale: | | (40,000.00) |
| | TOTAL: | $1,782,737.45 |

Plaintiff seeks the following in damages for its Claim and Delivery:

| | | |
|---|---|---|
| Damages | | 450,077.00 |
| Interest pursuant to 28 U.S.C. 1961 | | 22,002.55 |
| Costs | | 427.07 |
| Less re-sale | | (40,000.00) |
| | TOTAL: | $432,506.87 |

### G. Conspiracy by all Defendants; Count VI

Plaintiff alleges that all Defendants including individual Defendants Merchant, L. Lott, R. Lott, and Semann, are liable for a civil conspiracy with the aim to breach the four leases at issue in

---

[3] The Court finds attorney's fees are appropriately awarded, however, they are only properly awarded once as Plaintiff's attorneys are not entitled to a windfall. For the reason that Plaintiff has submitted only an aggregate amount of attorney's fees, that amount shall only be awarded once.

this action. (2d Am. Compl. ¶¶ 90-97). However, Plaintiff only seeks summary judgment against the corporate Defendants in this Motion. Therefore, as Plaintiff has failed to seek summary judgment as to all parties alleged to be involved in the alleged civil conspiracy, a genuine issues of material fact exist as to the involvement of those individual Defendants – the Court denies summary judgment at this time.

### III. CONCLUSION

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment as to all Corporate Defendants and award the requested amount of damages.

**SO ORDERED.**

          s/Paul D. Borman
          PAUL D. BORMAN
          UNITED STATES DISTRICT JUDGE

Dated: July 22, 2008

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 22, 2008.

          s/Denise Goodine
          Case Manager