**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

XEROX CORPORATION,

        Plaintiff,                    CASE NO.  06-CV-14358

vs.                             PAUL D. BORMAN
                             UNITED STATES DISTRICT JUDGE

N.W. COUGHLIN & CO., et al.,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AS TO ROBERT LOTT, LINDA LOTT, DAVID MERCHANT, AND**
**DARWIN SEMANN AND ALL DEFENDANTS AS TO CIVIL CONSPIRACY**

Now before the Court is Plaintiff Xerox Corporation's ("Plaintiff") November 14, 2008

Motion for Summary Judgment as to Individual Defendants and All Defendants as to Civil

Conspiracy.  (Dkt. No. 68).  A hearing on the matter was held on January 21, 2009.  Having

considered the entire record, and for the reasons that follow, the Court DENIES Plaintiff's Motion.

**I.     BACKGROUND**

    **A.     Factual Background**

This case arises from Plaintiff's allegation that Defendants have breached a series of leases

governing thirteen pieces of copier equipment.

Plaintiff is a New York corporation that maintains its principal place of business in New

York.  (2d Am. Compl. ¶ 1).  Defendant N.W. Coughlin & Co. ("N.W. Coughlin") is a Michigan

corporation with its registered office in Plymouth, Michigan.  (*Id*. ¶ 2).  Plaintiff believes that N.W.

Coughlin now operates under the name 1980 Corporation.  (*Id*.).  Defendant M. Blanc ("M. Blanc")

is a Nevada corporation with its principal place of business in Carson City, Nevada.  (*Id.* ¶ 3).

Defendant N.W.C. Program Administration, which does business as N.W. Coughlin & Co.

("N.W.C") (N.W. Coughlin, M. Blanc, and N.W.C. are collectively referred to as the "Corporate

Defendants"), is a Michigan corporation with its principal place of business at 13001 Merriman Rd.,

Livonia, Michigan.[1]  (*Id.* ¶ 4).

Plaintiff's Second Amended Complaint also names four individual defendants who are

citizens of Michigan and reside in this District: Robert Lott ("R. Lott"), Linda Lott ("L. Lott"),

David Merchant ("Merchant"), and Darwin Semann ("Semann") (collectively, the "Individual

Defendants").  (*Id.* ¶¶ 5-8).

Plaintiff, among other endeavors, supplies and leases copying and printing equipment to

businesses and also services the equipment.  (*Id.* ¶ 10).  Both N.W. Coughlin and N.W.C. are in the

business of providing marketing support services to businesses and individuals, including printing

and copying services.  (*Id.* ¶¶ 11-12).

In 1980, N.W. Coughlin was incorporated as "1980 Corporation," however, one month after

its incorporation its named was changed to N.W. Coughlin & Co.  (*Id.* ¶ 13).  Defendants R. Lott

and L. Lott acted as officers, directors, and/or resident agents of N.W. Coughlin from 1983 through

2006.  (*Id.* ¶ 14).

N.W.C. was incorporated in 1994 as "N.W.C. Administration, Inc.," one month later its name

was changed to "N.W.C. Program Administration, Inc."  (*Id.* ¶ 16).  Defendants R. Lott and L. Lott

acted as an officers, directors, and/or resident agents of N.W.C. from 1994 until at least October 1,

2006.  (*Id.* ¶ 17).  Semann also worked for N.W. Coughlin, as Chief Operating Officer ("COO"),

---

[1] Plaintiff also notes that N.W. Coughlin formerly did business at 13001 Merriman Rd., Livonia, Michigan.  (*Id.* ¶ 2).

from 1983 until 1992, however, continued to receive health insurance and a cell phone from N.W. Coughlin through 2006.  (Pl.'s Br. Ex. 10, Semann Dep. 11:24–12:8, Oct. 31, 2007).

Both N.W.C. and N.W. Coughlin maintained a physical location at 13001 Merriman Rd., Livonia, Michigan.  (2d Am. Compl. ¶¶ 15, 18).

M. Blanc is an investment, and consulting company that made loans to N.W. Coughlin that were secured by collateral owned by N.W. Coughlin.  (*Id.* ¶ 19).

M. Blanc was incorporated in Nevada in 1998.  Semann has acted as M. Blanc's sole officer, director, and resident agent of M. Blanc from 1998 through the present, during this time period M. Blanc held promissory notes from and security interests in the assets of N.W. Coughlin.  (*Id.* ¶¶ 20-21).  In 2005 and 2006, M. Blanc held its shareholders and directors' meetings in Plymouth, Michigan and Livonia, Michigan.  (*Id.* ¶ 23).

Plaintiff and N.W. Coughlin executed four lease agreements for the use of equipment which was to be used by N.W. Coughlin in its business. (Pl.'s Br. Ex. 1, May 2003 Lease; Ex. 2,  August 2003 Lease; Ex. 3, July 2005 Lease; Ex. 4,  December 2005 Lease).

Defendants admitted in their Answer to the Second Amended Complaint that N.W. Coughlin has "missed some payments" to Plaintiff.  (Answer ¶ 45).  Plaintiff further contends that N.W. Coughlin failed to make any lease payments from March 2006 to the present time. (Pl.'s Br. Ex. 19, Janet Atkinson Aff. ¶ 4; Dkt. No. 43, Ex. 8, Answer to Pl.'s Req. to Admit, No. 3 at 9).  Plaintiff notes that Defendants failed to return or purchase the equipment at the time of default,  (Atkinson Aff. ¶ 8), as is required under the lease agreements.  (Pl.'s Br. Ex. 1, Lease Agreement, General Terms, ¶ 13.B.).

In the summer of 2006, N.W. Coughlin was in financial trouble and purportedly entered into negotiations with a company called Wolverine to purchase its assets. (Merchant Dep. 63:24–64:12). The deal fell through and the discussion of selling the company shifted to Merchant. (Merchant Dep. 65:22–66:1, 67:16–68:21).

On August 17, 2006, M. Blanc sent a letter to N.W. Coughlin which indicated that N.W. Coughlin had "materially defaulted" on its loans, in the principal amount of $1,300,000.00. (Pl.'s Br. Ex. 6, Aug. 17, 2006 Letter). In the letter, M. Blanc, noted that it was willing to accept "a voluntary surrender of all the assets of N.W. Coughlin & Company in full satisfaction of the secure indebtedness." (*Id*.).

In September 2006, Plaintiff received a letter from Defendants' counsel indicating that N.W. Coughlin surrendered all of its assets to M. Blanc, including equipment in which Plaintiff has a security interest. (Pl.'s Br. Ex. 10, Sept.1, 2006 Letter).

On September 30, 2006, L. Lott, N.W.C.'s sole shareholder, resigned as President, Treasurer, Secretary, Director and Resident Agent of N.W.C., and assigned all her stock to the company. (Pl.'s Br. Ex. 16).

On October 1, 2006, Merchant, a long time employee of N.W. Coughlin, purchased all of N.W.C.'s outstanding stock for $120,000, became the sole director, sole officer, and resolved to purchase all of N.W. Coughlin's assets and to finance the purchase with a promissory note and security agreement with M. Blanc. (Pl.'s Br. Exs. 11–13). That same day, N.W.C. executed a promissory note in the amount of $800,000 and a security agreement to purchase N.W. Coughlin's assets from M. Blanc. (Pl.'s Br. Ex 14).

Before Merchant even purchased the N.W.C. stock, he  signed three "Certificates of Assumed Name," on July 31, 2008, as president of N.W.C.  (Pl.'s. Br. Ex. 17). The certificates, which became effective August 10, 2006, allowed N.W.C. to do business under the name "N.W. Coughlin & Co." (*Id.*)  In addition, on August 9, 2006, N.W. Coughlin changed its name to "1980 Corporation."  (Pl.'s Br. Ex. 18).  Therefore, it appears that one of the companies was always functioning as "N.W. Coughlin & Co."

On or about October 20, 2006, N.W.C. attempted to purchase five of the thirteen pieces of copier equipment from Plaintiff and lease two others from Plaintiff.  In a letter by Plaintiff's counsel dated October 23, 2006, Plaintiff offered to sell five pieces of equipment to Defendant for $35,000.00.  The letter also explained that while Plaintiff acknowledged N.W.C.'s desire to lease two of the pieces, certain administrative issues prevented Plaintiff from doing so.

R. Lott testified that N.W. Coughlin/1980 Corporation is now winding down its business and is no longer operating.  (Pl.'s Br. Ex. 8. Lott Dep. 39:7–40:15, Oct. 31, 2007).  Semann has also testified that M. Blanc is winding down its business.  (Semann Dep. at 14:6–8).

### B.    Procedural Background

Plaintiff filed a breach of contract claim against N.W. Coughlin on October 3, 2006.  Plaintiff also filed a state court action against N.W.C. for "Claim and Delivery" because N.W.C. refused to return the equipment it possessed without conditions.  (Pl.'s Br. at 8).  Thereafter, Plaintiff and Defendants N.W. Coughlin and N.W.C. agreed to consolidate the cases and the state action was voluntarily dismissed.  (*Id.*).

On December 14, 2007, Plaintiff filed a Motion for Summary Judgment as to Corporate Defendants: N.W. Coughlin, N.W.C. Program Administration, and M. Blanc.  (Dkt. No. 43).

Defendants failed to file a response to the December 14, 2007 Motion for Summary Judgment or request an extension in which to file a response to the Motion.  A hearing on the matter was held on May 15, 2008, and the Court heard oral argument from both parties.

On July 22, 2008, the Court issued an Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment ("July 22, 2008 Order"). (Dkt. No. 56).  The Court denied Plaintiff's summary judgment motion on Count VI, Civil Conspiracy as to All Defendants, but granted summary judgment on Counts I–V and VII and awarded damages to Plaintiff in the amount it requested.

On September 16, 2008, the Defendants filed a Motion for Reconsideration or in the Alternative, Relief from the Judgment.  (Dkt. No. 62).  The Court denied Defendants' Motion for Reconsideration on January 9, 2008, but ordered oral argument and permitted additional briefing regarding the specific amount of damages awarded in its July 22, 2008 Order.

Plaintiff now moves this Court to grant summary judgment on its two remaining claims.

II.   **ANALYSIS**

A.   **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof."  FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135,

145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.      Piercing the Corporate Veil of the Corporate Defendants

In actions against shareholders of corporations, Michigan courts begin with the initial presumption that the corporate form will be respected. *Seasword v. Hilti*, 449 Mich. 542, 546 (1995) (citations omitted). "This presumption, often called the 'corporate veil' may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some overriding public policy.'" *Id.* (quoting *Wells v. Firestone*, 421 Mich. 641, 650 (1984)).  "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have the corporate structure in an attempt to avoid legal obligations." *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 456 (1996) (citing *Allstate Ins. Co. v. Citizens Ins. Co. of America*, 118 Mich. App. 594, 600 (1982)).

Michigan courts pierce the corporate veil upon a finding of three elements: (1) that the corporate entity was a mere instrumentality of another entity or individual, (2) that the corporate entity was used to commit a fraud or wrong, and (3) that there was an unjust loss or injury to the plaintiff. *Foodland*, 220 Mich. App. at 457 (1996).  In making this determination, courts consider several factors, including the sufficiency of the capitalization of the corporation, the maintenance of separate books, the degree of separation of the corporation's and shareholders' finances, any disregard of corporate formalities, the existence of the corporation as a sham.  *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 705 (6th Cir. 1988).  As a result, "[t]he propriety of piercing the corporate veil is highly dependent on the equities of the situation, and the

inquiry tends to be intensively fact-driven." *Servo Kinetics, Inc v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783 (6th Cir. 2007) (citing *Kline v. Kline*, 104 Mich. App. 700, 702–03 (1981)).

Plaintiff cites *Bodenhamer Building Corporation v. Architectural Research Corporation*, 873 F.2d 109 (6th Cir. 1989) as instructive. In *Bodenhamer*, the Sixth Circuit affirmed the lower court's piercing of the corporate veils of two wholly-owned subsidiaries of a common parent company. *Id.* at 110. Bodenhamer, a general contractor, contracted with Architectural Research Corporation ("ARC"), a subsidiary of American Standards Testing Bureau ("ASTB") for the supply of pre-cast polymer concrete panels. *Id.* When ASTB acquired 100 percent ownership in ARC, Victor Morfopolous, ASTB's sole shareholder and chief executive officer, became chief executive officer of ARC as well. *Id.* In addition, ASTB and ARC executed a revolving loan agreement whereby (1) ASTB loaned money to ARC payable on demand and (2) ARC gave ASTB a security interest in all of its personal property. *Id.* Shortly thereafter, Bodenhamer sued ARC seeking damages for breach of contract, eventually receiving a judgment against ARC. *Id.* But before Bodenhamer could collect the judgment, ASTB declared ARC in default and filed claim and delivery actions to foreclose on its lien  and to enforce its security interest in ARC's property.  *Id.* To satisfy ASTB's lien against ARC, ARC conducted an auction sale of its assets that was attended by two of ASTB's employees, ASTB's attorney, and a representative from one of ARC's competitors. *Id.* at 111. Through the only bid at the auction, ASTB purchased ARC's assets for $115,000, leaving $92,796.22 in unsecured and unpaid debt still owed to Bodenhamer and others. *Id.* Thereupon, ARC ceased operations and ASTB leased ARC's foreclosed assets to another one of its wholly owned subsidiaries, Ar-Lite Panelcraft, Inc. ("API"), which occupied the premises formerly used by ARC. *Id.*

The Court acknowledges that the facts of *Bodenhamer* are somewhat similar to those in the present action in that an unsecured creditor has been left with unpaid debt as a the result of a foreclosed security interest that resulted in a subsequent resale of assets to a related corporation. Nevertheless, the facts at issue here do not warrant a finding that the Individual Defendants were alter egos of the Corporate Defendants.

In a letter dated August 17, 2006, Semann, as president of M. Blanc, informed L. Lott that N.W. Coughlin had materially defaulted on secured loans issued by M. Blanc in the principal amount of $1,300,000.00 with a total indebtedness of $1,557,679.20.  (Pl.'s Br. Ex. 6).  M. Blanc had issued secured debt to N.W. Coughlin on at least six different occasions over a period of eleven years.  In satisfaction of that debt, M. Blanc sought the assets of N.W. Coughlin. When it became apparent that N.W. Coughlin would need to file for bankruptcy, Merchant, a longtime employee of N.W. Coughlin considered purchasing its assets.  After M. Blanc foreclosed on those assets as a secured creditor,

Merchant purchased those assets back from M. Blanc using an $800,000 promissory note issued by M. Blanc.  Before purchasing those assets, however, on October 1, 2008, Merchant purchased all of N.W.C's outstanding stock, which L. Lott had assigned to N.W.C. a day earlier, for $120,000. (Pl.'s Br. Exs. 11, 12, 13, 16). In addition to assigning her stock of N.W.C. back to N.W.C. on September 30, 2006, L. Lott  resigned as president, treasurer, secretary, director, and resident agent of N.W.C.  (Pl.'s Br. Ex. 16).   Even though L. Lott did not resign as president of N.W.C. until September 30, 2006 and Merchant did not elect himself as president until October 1, 2006, Merchant had previously signed three State of Michigan Certificates of Assumed Name on July 31, 2008 as "President" of N.W.C.   (Pl.'s Br. Ex. 17).  These certificates, which clearly indicate that they are effective on the date filed, were filed with the State of Michigan on August, 10, 2008.  Furthermore,

on August 8, 2006, before even receiving the letter of default from Semann, N.W. Coughlin changed its name to 1980 Corporation.

While these facts may provide the Court with justification for piercing the corporate veil of N.W.C.—the same conclusion reached in Bodenhamer—Plaintiff is not seeking to pierce that veil as the Court already has determined that N.W.C. was a "mere continuation" of N.W. Coughlin in its July 22, 2008 Order.    Construing these facts in the light most favorable to the Individual Defendants, the Court finds that the Individual Defendants' actions do not warrant a piercing of the corporate veil of the Corporate Defendants.

### 1.    The Corporate Entities as Mere Instrumentalities of the Individual Defendants

As noted by Plaintiff, each of the Individual Defendants assumed positions by which they were able to exert control over one or more of the Corporate Defendants.

From 1983 to 2006, R. Lott and L. Lott served as officers, directors, and resident agents of N.W. Coughlin, with John Kepshire serving as President of N.W. Coughlin for a majority of that time period.  (Pl.'s Br. Ex. 20).  From 1994 to 2006, R. Lott and L. Lott also served as officers and directors of N.W.C, and at various times during this time period, they served as officers and/or directors of both N.W. Coughlin and N.W.C.   In addition, L. Lott was the sole shareholder for both entities.   N.W. Coughlin and N.W.C also shared the same corporate address and physical address in Plymouth and Livonia, Michigan.  R. Lott testified that N.W.C. was a shell corporation and never had any clients of  its own before Merchant took it over and ran it.  (R. Lott Dep. 6:13–16).

Semann, the sole officer and director of M. Blanc, was an employee of N.W. Coughlin from 1983 to 1992 and served as the President of N.W.C.  in 1995 and 1999, Secretary in 1996, and Resident Agent in 1995. (Pl.'s Br. Ex. 20). While M. Blanc never lent money to N.W. Coughlin

during the years in which Semann served as an officer of N.W.C., M. Blanc did lend money to N.W.

Coughlin on at least six separate occasions in 1993, 2001, and 2004—years in which it appears as

though he was listed as an employee of N.W. Coughlin. (Pl.'s Br. Ex. 24; Dkt. 43, Ex. 21, Semann

Dep. 12:1–14).   In his deposition testimony, Semann acknowledges that he was technically an

employee of N.W. Coughlin after his retirement in 1992 all the way until 2006 because part of his

termination agreement granted him continuing health insurance and cell phone benefits. (Semann

Dep. 12:5–8).

Merchant became the sole officer, director, and shareholder of N.W.C. on October 1, 2006.

Before that time, he never acted as an officer, director, or shareholder for any of the Corporate

Defendants.  Instead, Merchant worked as an employee of N.W. Coughlin for the prior thirty years,

primarily as a production supervisor. According to Merchant's sworn testimony, N.W. Coughlin was

in financial trouble and when he found out that the sale of N.W. Coughlin to a Wolverine had fallen

through, he raised his hand and said that he would be willing to take on the endeavor.  (Merchant

Dep. 38:7–12).  Merchant made an initial capital contribution of $120,000 toward the purchase of

N.W. Coughlin's assets from M. Blanc, and the remainder of the purchase price was financed by M.

Blanc vis-a-vis an $800,000.00 promissory note signed by Merchant.  Although the signature block

designates N.W.C., Merchant testified that he believed he was personally liable on the promissory

note. (Merchant Dep. 81:4–11).  After the sale of assets, Merchant became in charge of the day-to-

day operations.  (*Id*. 52:13–15).

In the present case, construing the facts most favorably to the Individual Defendants, the

Court finds that genuine issues of material fact exist as to whether each of the Corporate Defendants

were mere instrumentalities of each of the Individual Defendants.  Plaintiff has not brought forth any

evidence showing that any of the three Corporate Defendants were under-capitalized, that the

Corporate Defendants or the Individual Defendants shared any of same books and records, that the Individual Defendants used the Defendant Corporation's finances or assets for personal use, or that any of the Individual Defendants disregarded any corporate formalities.

Instead, the record is filled with evidence showing the Corporate Defendants were much more than mere instrumentalities of the Individual Defendants. N.W. Coughlin was an independent printing operation with its day-to-day operations run and finances governed by individuals other than the Individual Defendants since 1980. In fact, none of the equipment leases with Plaintiff were signed or guaranteed by any of the Individual Defendants. Likewise, M. Blanc is a properly formed Nevada business in operation since 1993, with its own commercial office, phone, receptionist, checking accounts, and books and records. (Defs.' Br. Ex. 4, Semann Aff. ¶ 1). Even though Semann was a former officer of N.W.C. and an regular employee of N.W. Coughlin up until 1992, M. Blanc properly lent N.W. Coughlin money and secured its interests through all the assets of the corporation after Semann retired from N.W. Coughlin. In addition, while N.W.C. operated as a shell corporation and was given to Merchant by L. Lott, Merchant never played any major role in either N.W. Coughlin or N.W.C. while he was an employee of N.W. Coughlin and capitalized N.W.C. with $120,000 of his personal funds.    No doubt there are some questionable relationships and questionable transactions between the Corporate Defendants, but they are not enough to justify piercing the veils of the Corporate Defendants on Plaintiff's motion for summary judgment.

### 2.    Corporate Entity Used to Commit a Fraud or a Wrong

In its brief, Plaintiff attempts to chronicle how the Individual Defendants, as those in control of the Corporate Defendants, orchestrated an elaborate scheme to use Plaintiff's equipment to satisfy outstanding debts (the Lotts as those in control of N.W. Coughlin), to achieve a higher return on a re-sale of assets (Semann as sole shareholder of M. Blanc), and to run a business (Merchant as sole

shareholder of N.W.C.).  Specifically, Plaintiff claims that (1) "the Lotts knowingly and wrongfully transferred the Equipment to Semann and M. Blanc, obtaining a benefit by virtue of credit for the Equipment against N.W. Coughlin's debts to M. Blanc," (2) "Semann knowingly possessed and sold the Equipment even though he was aware that N.W. Coughlin was only leasing the Equipment and that the Equipment was in, in fact, owned by Xerox," and (3) Merchant "wrongfully used the wrongfully obtained equipment in the course of his business."  (Pl.'s Br. 12–13).

Although the facts sufficiently demonstrate that N.W. Coughlin benefitted from the transfer by  at least temporarily evading N.W. Coughlin's debt to Plaintiff on the unpaid leases, they do not wholly comport with Plaintiff's version of the story.  For the reasons set forth below, the Court finds that Plaintiff has not sufficiently established the second element.

First, just like the security interest it is based upon, the August 16, 2008 letter from Semann seeks a voluntary surrender of the all of the assets of  N.W. Coughlin.  It does not differentiate among N.W. Coughlin's assets or provide special credit for any particular asset.   The letter simply is seeking the collateral contemplated by the security interest—i.e. all of N.W. Coughlin's assets. Thus, even if Plaintiff brought forth evidence establishing that M. Blanc exerted dominion or control over the equipment and then later sold it to N.W.C. for a higher return—which it has not—Plaintiff has not shown that N.W. Coughlin received any type of special credit for surrendering assets that it never owned.

Second, Plaintiff has not brought forth evidence tending to show that M. Blanc took possession or exerted any kind of control over the equipment.  The only evidence that Plaintiff does offer is a photocopied letter from M. Blanc's counsel to Plaintiff that provides in pertinent part:

> When the secured loans owing by N.W. Coughlin to M. Blanc went into default, [M. Blanc] made a demand on N.W. Coughlin to voluntarily surrender all of its assets in full satisfaction of the secured indebtedness. . . .

The voluntary surrender of all the assets of N.W. Coughlin to M. Blanc has now been completed.  However, in reviewing a recent UCC search, it was determined that your company may have a security interest in some of the assets which have been surrendered to our client."

(Dkt. No. 43, Ex. 10).   At best, this establishes that N.W. Coughlin surrendered all of its assets to M. Blanc, including the equipment, and that M. Blanc believed that it had an interest in that equipment.   It does not establish that M. Blanc took possession of the equipment or included it as part of the sale of N.W. Coughlin's surrendered assets to N.W.C.   R. Lott's testimony refutes any type of possession or active control by M. Blanc after N.W. Coughlin surrendered its assets.  R. Lott testified that N.W. Coughlin did not own the Xerox equipment, that N.W. Coughlin only transferred whatever it owned to M. Blanc, and that if it did not own something, N.W. Coughlin did not transfer it.  (R. Lott Dep. 16:16–20; *see also id*. 20:22–21:2).   In addition, Semann testified that M. Blanc never took possession of the equipment.  (Semann Dep. 23:9–11). Moreover, it is important to note that the letter was written voluntarily by M. Blanc's counsel to determine Plaintiff's exact interest in the equipment.

Third, while Merchant admitted that N.W.C. used the equipment for a month or two after he took over the company, he also asserts that during this time, he was in negotiations with Plaintiff to purchase five pieces of the equipment and lease two others. (Defs.' Resp. Ex. 2).   Plaintiff does not contest this.  In fact, Plaintiff even offered to sell the five pieces of equipment to N.W.C. for $35,000.  (Defs.' Resp. 2).  Given (1) that Plaintiff has not brought forth evidence establishing that Merchant was aware of N.W. Coughlin's default at the time he admits to using the equipment and (2) that Merchant attempted to purchase some of the equipment—presumably those pieces that N.W.C. had a need for—genuine fact issues remain as to whether N.W.C. committed wrongs that justify piercing its corporate veil.

### 3.      Unjust Loss or Injury to the Plaintiff

Plaintiff argues that as a result of the Individual Defendant's conduct, Plaintiff suffered two losses.  First, Plaintiff claims that "Defendants[']" default on the leases caused Plaintiff a loss. Second, Plaintiff contends that the Individual Defendants "conspired to fraudulently transfer the [e]quipment among the Corporate Defendants . . . , thereby depriving [Plaintiff] of it [e]quipment for more than one year."  (Pl.'s Br. 14).

Plaintiff's first claim is too broad.  Only N.W. Coughlin defaulted on the leases.  To the extent that any other Defendant is liable for N.W. Coughlin's default, the Court already sufficiently addressed that issue in its July 22, 2008 Order in finding that N.W.C. was a successor-in-interest to N.W. Coughlin, and therefore liable on Plaintiff's breach of contract claim.

As to Plaintiff's second claim, it is undisputed that Plaintiff did not receive its equipment back for over a year.  According to the lease agreements, once N.W. Coughlin defaulted on the leases, it was required to (1) return the equipment to Plaintiff, when requested to do so by Plaintiff, or (2) purchase the equipment for the fair market value.  N. W. Coughlin did not satisfy either of these conditions.  M. Blanc and N.W.C. were not parties to these leases and therefore did not have a contractual obligation to return the equipment to or purchase it from Plaintiff.  Nevertheless, N.W.C. entered into negotiations with Plaintiff to purchase the equipment shortly after Merchant assumed control of the corporation.   Once the negotiations between N.W.C. and Plaintiff broke down after Plaintiff reneged on its offer, Merchant purchased equipment elsewhere.  Thus, Plaintiff has only shown that it has suffered loss to the extent of N.W. Coughlin's default of the lease agreements.

Accordingly, construing the facts in the light most favorable to the Defendants, the Court declines not to pierce the corporate veils of any Corporate Defendants.

### C.      Civil Conspiracy as to all Defendants

Plaintiff alleges that all Defendants including individual Defendants Merchant, L. Lott, R. Lott, and Semann, are liable for a civil conspiracy with the aim to breach the four leases at issue in this action.  (2d Am. Compl. ¶¶ 90-97).   Plaintiff argues that Defendants assisted N.W. Coughlin in breaching its agreements with Plaintiff "by knowingly receiving, possessing, and in M. Blanc's case, transferring, converted property . . . in an effort to avoid liability to [Plaintiff], yet retain and use the equipment." (Pl.'s Br. 15).

Under Michigan law, a "[c]ivil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Temborius v. Slatkin*, 157 Mich. App. 587, 600 (1986). "The agreement, or preconceived plan, to do the unlawful act is the thing that must be proved." *Id*. at 600.  Moreover, "[t]o establish a conspiracy to defraud, one must show both an illegal purpose and damages." *Goldsmith v. Moskowitz*, 74 Mich. App. 506, 521 (1977).

Plaintiff is not entitled to summary judgment on its civil conspiracy claim because genuine issues of material fact persist as to whether there was a concerted action or agreement on behalf of Defendants.  Plaintiff has not brought forth evidence—and barely alleged any facts—demonstrating that there was a concerted action or agreement on behalf of Defendants.  Instead, the Individual Defendants have denied under oath that they conspired to harm Plaintiff.  Accordingly, the Court DENIES Plaintiff's Motion on this cause of action.

### III.     CONCLUSION

For all these reasons, the Court:

17

> (1)     DENIES Plaintiff summary judgment on its alter ego/piercing the corporate veil
>
> claim as to Robert Lott, Linda Lott, David Merchant, and Darwin Semann (Count
>
> VIII); and
>
> (2)     DENIES Plaintiff summary judgment on its civil conspiracy claim as to all
>
> Defendants (Count VI).

**SO ORDERED.**


                                         S/Paul D. Borman
                                         PAUL D. BORMAN
                                         UNITED STATES DISTRICT JUDGE

Dated:  February 4, 2009

                         CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
February 4, 2009.


                                         S/Denise Goodine
                                         Case Manager